**Antoinette HOFFMAN**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

Civ. A. No. 73-2255.

United States District Court,
E. D. Pennsylvania.

Sept. 26, 1974.

Henry E. Skaroff, Philadelphia, Pa., for plaintiff.

James H. Manning, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health, Education, and Welfare. Plaintiff, a forty-nine year old woman, applied for disability insurance benefits under 42 U.S.C. §§ 423 and 416(i) in February, 1971. Her application was denied by an administrative law judge, which decision became the final decision of the Secretary in this case when the Appeals Council denied plaintiff's request for review on August 13, 1973. Plaintiff appealed the Secretary's decision to this Court, and both sides have filed motions for summary judgment. The sole question for us to decide is whether the Secretary's decision to deny plaintiff disability benefits is supported by substantial evidence. Willis v. Gardner, 377 F.2d 533 (4th Cir. 1967).

Plaintiff was born in September, 1925, and had a high school education. In her application for disability insurance benefits she stated that she stopped working in 1959. Records posted to her

social security account show that in the years between 1946 and 1950 her earnings ranged between $530.78 a year to $820.18 a year. In 1951 she earned $1,227.38; in 1952 she earned $3,089.98; in 1953 her earnings were $567.75; in 1954 they were $52.40; in 1955 they were $56.50 and in 1956 they were $98.-17. There were no earnings posted to her account until 1959 when in the third quarter of the year she earned $94.88. At the hearing she stated that she did not know when she became disabled, whether it was in 1952 or 1957.

Plaintiff stated she stopped working because she could not walk. She stated that she would go to bed at night and get up in the morning and then just could not walk. She stated that she went to work for the last five years for the firm only because she had been with them so long and it was a lot of money involved and they needed her. She stated that she "could not work steady and did not work steady but when the season got busy which would be Christmas and Easter," she would go in to work. She stated that her employer would send cabs to pick her up and that was no problem for him, but once she got there she could do nothing unless she sat all day and ate at her desk. Plaintiff had been married in 1949 and she had two children. On her request for reconsideration of the initial denial of her disability benefits she stated that although her hip fusion was a good operation that she was unable to walk at all due to an arthritic back. She stated that it was a condition that had been bothering her since 1952. She stated to a representative of the Social Security Administration that some mornings she could walk and others she could not. She had been advised that when pain occurred to stay off her feet and that she was not on any medication except aspirin and "Bufferin." She stated that she was unable to stand and if she washed the clothes and was standing out an hour she would be unable to walk for the rest of the day. She lived in a two-story house with her husband and two children. She had someone come in once a week to do the cleaning and she could do a little bit to keep herself busy. When she came to apply for her disability insurance benefits she came to the office by herself. The representative observed that she walked slowly.

To qualify for disability insurance benefits and a period of disability under sections 223 and 216(i) of the Social Security Act, 42 U.S.C.A. 423 and 416(i), an individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The term "disability" is defined in section 223 to mean:

"(d)(1) * * *

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *

(B) * * *

(2) For purposes of paragraph (1)(A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means

work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(B) * * *

(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(4) * * *

(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

For purposes of establishing a period of disability under section 216(i) of the Social Security Act, as amended, the same disability provisions as contained in section 223(d)(1)(A), (2)(A), (3) and (5) of the Act, quoted *supra* are applied.

Only one who qualifies for insured status within the meaning of § 423(a) and (c) of the Social Security Act can receive disability insurance payments. Plaintiff last met the special insured status requirements of the Act on March 31, 1958. Thus she must show that she was unable to do any substantial gainful work by reason of a physical or mental impairment for twelve months before that date, or that she was incapacitated before that date and her incapacitation could be expected to last for a continuous period of at least twelve months thereafter.

A report submitted to the administrative judge by a Dr. Violette, who had treated plaintiff at monthly intervals from 1952 to 1958, stated that she had tubercular deossification and deformities of her left hip, as well as arthritis of the spine, and that these conditions had existed as early as 1952. His prognosis was that plaintiff was in no position to perform any gainful occupation and was,

for all practical purposes, confined to her home.

The only other physician who examined plaintiff before 1970 was Dr. Irving Stein, the orthopedic surgeon who had fused plaintiff's hip. Dr. Stein stated that plaintiff's third hip fusion operation in October 1942 had been successful and that by 1951 she was able to walk and otherwise led an active life. Dr. Stein did not treat the plaintiff between 1951 and 1958, but an examination of plaintiff performed after she filed her claim led him to believe that plaintiff's constant use of her back as an accessory hip joint to supplement the fused one and her obesity had caused severe degeneration of the lower lumbar region. He stated that she had gradually become more and more disabled since her hip fusion in 1942 and would become still more disabled in the future. He stated that she should be considered disabled for material active work, although she could be expected to do reasonably well at restricted work of a sedentary kind, even if such work required active exertion.

The reports of two other orthopedic surgeons who examined plaintiff in 1971 and 1972 support Dr. Stein's finding that plaintiff's lumbar spine had been severely weakened by the structural strain that resulted from her hip operation. Both of these physicians prescribed measures which plaintiff could take to alleviate her pain; one physician stated that a lumbar support would eliminate most of plaintiff's symptoms.

■ Neither the report of Dr. Stein nor the reports of the other doctors who examined plaintiff after 1970 support Dr. Violette's diagnosis of arthritis of the spine. Although Dr. Stein's report raises the inference that plaintiff might have been disabled prior to 1958, none of these physicians other than Dr. Violette state that plaintiff could not perform substantial gainful work at that time. Even Dr. Stein did not rule out sedentary work even at the present time. The fact that these doctors felt that

there was a good chance that plaintiff's symptoms were capable of being alleviated, when combined with the fact that plaintiff actually worked in the third quarter of 1959, is substantial evidence that plaintiff was physically and mentally able to engage in substantial gainful activity on or before March 31, 1958.

■ Plaintiff's counsel asks us to ignore the medical evidence underlying the administrative judge's decision and to focus upon plaintiff's obesity and grotesque appearance. Counsel argues that aside from any physical defects or deformities, her very appearance makes it unlikely that any employer would hire her. We have seen plaintiff, and we would concur in counsel's opinion. But Congress has expressly stated that the unwillingness of employers to hire a particular applicant for disability benefits is not a factor to be considered in determining disability. 42 U.S.C. 423(d)(2)(a) states:

"an individual . . . shall be determined to be under a disability only if his physical or mental impairment . . . are of such severity that . . : he cannot engage in any . . . kind of substantial gainful work which exists in the national economy . . . regardless of whether he would be hired if he applied for work."

As the Third Circuit stated in Gentile v. Finch, 423 F.2d 244, 246 (1970):

"Both the House Ways and Means Committee and the Senate Finance Committee stated in unequivocal terms that the intent of the amended definition was to make it clear that unwillingness of employers to hire the handicapped should not be considered in determining disability."

■ The plaintiff is a pitiable figure, but the law is clear: if there is substantial evidence to support the Secretary's finding that the plaintiff can physically perform some gainful work, that determination must be upheld regardless of the likelihood of plaintiff's being given the opportunity to perform that work.